# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### STATESVILLE DIVISION
#### 5:07cv104

| | | |
|---|---|---|
| **LOWE'S COMPANIES, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **Vs.** | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| **VARNELL, STRUCK AND** | ) | |
| **ASSOCIATES, INC.; DAVID** | ) | |
| **STRUCK; and JOHN VARNELL,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**THIS MATTER** is before the court upon Varnell, Struck and Associates, Inc.'s ("VSA's") Motion to Dismiss and David Struck's and John Varnell's (the "individual defendants'") Motion to Dismiss. Having carefully considered such motions and reviewed the pleadings, the court enters the following findings, conclusions, and Recommendation.

## FINDINGS AND CONCLUSIONS

### I.      Nature of the Action and Pending Motions

In this action, Lowe's Companies, Inc. ("Lowe's") contends that VSA breached its contractual duties to defend and indemnify Lowe's and to obtain insurance with respect to the services performed by VSA for Lowe's. Complaint, at ¶¶ 7-14. VSA contends that this action should be dismissed inasmuch as: (1) all of Lowe's claims in this action should be asserted as compulsory counterclaims in <u>Varnell, Struck &</u>

Associates, Inc. v. Lowe's Companies, Inc., 5:06cv68 (W.D.N.C. 2006), which is now pending before this court; (2) contract terms that were left open make the contract unenforceable as a matter of law; and (3) the contracted for duties to defend and indemnify are unenforceable under the Fair Labor Standards Act ("FLSA") as running contrary to public policy. In their separately filed Motion to Dismiss, the individual defendants contend that this court lacks personal jurisdiction over them, that venue is improperly laid in this court, and that the Complaint fails to state a claim upon which relief can be granted against them in their individual capacities.

After careful consideration of the well reasoned and thorough memoranda submitted by respective counsel, as well as the exhibits, and for the reasons that follow, the undersigned will respectfully recommend that the motions to dismiss be denied, but that this action be consolidated in accordance with Rule 42(a), Federal Rules of Civil Procedure, with Varnell, Struck & Associates, Inc. v. Lowe's Companies, Inc., supra.

## II.     Defendants' Motions to Dismiss: Applicable Standards

### A.     Rule 12(b)(2)

Rule 12(b)(2) provides for dismissal where the court lacks personal jurisdiction over a particular named defendant. In the Fourth Circuit, the standard for deciding a motion based on Rule 12(b)(2) was set forth in Combs v. Bakker, 886 F.2d 673, 676 (4th Cir.1989), where the appellate court explained that a plaintiff has the burden to prove personal jurisdiction by a preponderance of the evidence. When a factual dispute arises as to whether or not jurisdiction exists, the court may either conduct an

evidentiary hearing or defer ruling on the matter until it receives evidence on the jurisdictional issue at trial.  Id.  When a court decides the issue on the record then before it, the court may consider "the motion papers, supporting legal memoranda, affidavits, other documents, and the relevant allegations of the complaint," and the burden is plaintiff's "to make a mere *prima facie* showing of jurisdiction to survive the jurisdictional challenge." Clark v. Milam, 830 F.Supp. 316, 319 (S.D.W.Va.1993) (citations omitted).  A court must resolve factual disputes in favor of the party asserting jurisdiction for the limited purpose of the *prima facie* showing.  Bakker, at 676.  Such resolution must include construing all relevant pleadings in a light most favorable to the plaintiff, assume the credibility of any affiant, and drawing the most favorable inferences for the existence of jurisdiction.  Id.

### B.    Rule 12(b)(3)

In accordance with Rule 12(b)(3), a court may dismiss a complaint for improper venue or transfer venue to a court where it could have been brought.  28 U.S.C. § 1406(a).

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

28 U.S.C. § 1406(a). When considering a motion to dismiss for improper venue, a court must accept the facts alleged in the Complaint as true and must draw all reasonable inferences in the plaintiff's favor.  Micromuse, Inc. v. Aprisma

Management Technologies, Inc., 2005 WL 1241924, *2 (S.D.N.Y. 2005).[1]

Where as here the court's jurisdiction is founded solely on diversity of citizenship, Section 1391(a) provides that venue is only appropriate in

(1)    a judicial district where any defendant resides, if all defendants reside in the same State,

(2)    a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or

(3)    a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).

## C.    Rule 12(b)(6) Standard

Where a defendant contends that a plaintiff has failed to state a cognizable claim, Rule 12(b)(6) authorizes dismissal based on a dispositive issue of law. Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827, 1832 (1989); Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41 (1957). As the Court discussed in Neitzke:

> This procedure [for dismissal], operating on the assumption that the factual allegations in the complaint are true, streamlines litigation by dispensing with needless discovery and fact finding. Nothing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable. On the contrary, if as a matter of law "it is clear that no relief could be granted under any set of facts . . . a claim must be dismissed, without regard to whether it is based on outlandish legal theory . . . . What Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations."

---

[1]    Due to limits of electronic case filing, a copy of such unpublished opinion is incorporated into the electronic record through reference to the Westlaw citation.

Id., at 1832 (citation omitted). Dismissal of a complaint is proper under Rule 12(b)(6) where it is clear that no set of facts consistent with the allegations in the plaintiffs' complaint could support the asserted claim for relief. Taubman Realty Group LLP v. Mineta, 320 F. 3d 475, 479 (4th Cir. 2003); Migdal v. Rowe Price-Fleming Intl Inc., 248 F. 3d 321, 325-36 (4th Cir. 2001). However, the Court recently held that the "no set of facts" standard first espoused in Conley, supra, only describes the "breadth of opportunity to prove what an adequate complaint claims, not the minimum adequate pleading to govern a complaint's survival." Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S.Ct. 1955 (2007). Under Twombley, to survive Rule 12(b)(6) scrutiny, the claims must at a minimum be "plausible." Id.

While the court accepts plausible factual allegations in the complaint as true and considers those facts in the light most favorable to a plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt.'s Inc. v. J.D. Assoc.'s, LLP, 213 F. 3d 175, 180 (4th Cir. 2000).

> The presence of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support the legal conclusion. And although the pleading requirements of Rule 8(a) are very liberal, more detail often is required than the bald statement by plaintiff that he has a valid claim of some type against defendant. This requirement serves to prevent costly discovery on claims with no underlying factual or legal basis.

Migdal, at 326 (citations and internal quotations omitted). In addition, a court cannot "accept as true allegations that contradict matters properly subject to judicial notice

or by exhibit." <u>Venev v. Wyche</u>, 293 F. 3d 726, 730 (4th Cir. 2002) (citations and internal quotations omitted). For the limited purpose of ruling on defendants' motions, the court has accepted as true the facts alleged by plaintiff in the Complaint and will view them in a light most favorable to plaintiff.

## III.   Factual Background

The following facts have been considered in a light most favorable to plaintiff for the limited purpose of considering defendants' motions to dismiss. Such factual recitation is not intended to be binding on the court or the parties in further proceedings.

Lowe's, a North Carolina corporation headquartered in Mooresville,  is a national home improvement retailer. Compl., at ¶ 1. VSA is a vendor that provided in-store services to Lowe's, including replenishing inventory, maintaining retail displays, providing customers with marketing materials and returning defective products to manufacturers. <u>Id.</u>, at ¶¶ 2, 8. The individual defendants are the sole shareholders of VSA. <u>Id.</u> ¶¶ 3-4.

From 2002 until 2005, VSA's work for Lowe's was performed pursuant to five separate contracts, each of which covered services for a different product line sold by Lowe's. <u>Id.</u>, ¶¶ 8, 15. In each of these contracts, VSA agreed to defend and indemnify Lowe's against any claims that might arise relating to the work VSA performed in Lowe's stores. <u>Id.</u>, at ¶ 17. VSA also agreed to maintain comprehensive liability insurance, including coverage for contractual liability, on behalf of Lowe's. <u>Id.</u>, ¶ 18.

In 2004, VSA was sued in California by a group of VSA employees in a nationwide class action lawsuit alleging wage-payment practices in violation of labor laws, Dudash v. Varnell, Struck and Associates, Inc., C.D. Cal. No. C04-10067 ("Dudash"). Id., at ¶ 10. According to the Complaint, the Dudash plaintiffs were employees of VSA whom VSA had used to fulfill its obligations to Lowe's under the Lowe's/VSA contracts at issue in this case. Id. Lowe's maintains that in an effort to induce the Dudash plaintiffs to seek a recovery from Lowe's - - which is a deeper pocket than VSA - - defendants embarked on a scheme designed to convince the Dudash plaintiffs and their counsel that VSA had insufficient funds to satisfy any significant monetary judgment that might be awarded against VSA. Id., at ¶ 11. In May 2006, the Dudash plaintiffs filed a motion to amend their complaint to, among other things, add Lowe's as a defendant. Id. ¶ 12. Lowe's contends herein that such amendment was the fruit of VSA's scheme to foist their own liability onto the back of Lowe's. Shortly after amendment, plaintiffs' counsel in Dudash enlisted the assistance of VSA by settling their claims against VSA in consideration for VSA's agreement to help plaintiffs in their case against Lowe's. Id.

Lowe's contends that VSA's actions in the California action constitute a breach of each of the contracts VSA entered into with Lowe's. Specifically, Lowe's contends that because the Dudash litigation raises claims against Lowe's that VSA was contractually required to defend, the agreement by VSA to help the Dudash plaintiffs constitutes a breach of each of VSA's contracts with Lowe's.

Lowe's further alleges that on June 27, 2006, VSA and the Dudash plaintiffs

memorialized their settlement by executing an agreement in which VSA and its co-owners, the individual defendants herein, obtained a complete release from any liability in <u>Dudash, supra,</u> in consideration of $350,000.00, and the VSA defendants' agreement to help the Dudash plaintiffs prosecute their claims against Lowe's. <u>Id.,</u> at ¶¶ 29-30. Such assistance allegedly included: (1) providing the Dudash plaintiffs with payroll and employment records of class members; (2) providing Rule30(b) (6) witnesses for the litigation against Lowe's; (3) making Struck and Varnell available to testify voluntarily at trial without the need for service of process; and (4) acquiescing in a three-week extension of time for FLSA class members to join the action. <u>Id.</u> In addition, VSA neither contested plaintiffs' motion to add Lowe's as a defendant in Dudash nor disputed plaintiffs' claim that Lowe's was a joint employer under the FLSA and thus responsible for any labor law violations committed by VSA employees. <u>Id.,</u> ¶¶ 28, 31. Lowe's contends that VSA took these positions despite the fact that plaintiffs were VSA employees and that under the contracts, Lowe's had no right to control VSA's payment of wages to its employees.

Lowe's alleges that it only filed this action after it requested that VSA fulfill its contractual obligations to indemnify and defend Lowe's against the claims raised in the Dudash litigation. <u>Id.,</u> at ¶¶ 51, 60, 70, 79, 89, 98, 108, 117, 127, 136.

## IV.   VSA's Motion to Dismiss

VSA argues that Lowe's First through Tenth and Sixteenth Causes of Action should be dismissed for failure to state a claim and that the Eleventh through Fifteenth Causes of Action should be dismissed under the "First Filed" doctrine.

VSA divides its motion for dismissal into three distinct arguments: (1) all of Lowe's claims in this action should dismissed and asserted as compulsory counterclaims in Varnell, Struck & Associates, Inc. v. Lowe's Companies, Inc., 5:06cv68 (W.D.N.C. 2006), which is now pending before this court; (2) certain contract terms that were left open make the contracts unenforceable as a matter of law; and (3) the contracted for duties to defend and indemnify are unenforceable under the Fair Labor Standards Act ("FLSA") as running contrary to public policy. The undersigned will address each argument seriatim:

**A.  Compulsory Counterclaims**

VSA first argues that because its action against Lowe's was first filed, the claims asserted in this action should be made in that action as compulsory counterclaims inasmuch as they arise out of the same agreements, transactions, and course of dealings. In the earlier filed action, VSA contends primarily that Lowe's improperly terminated the same agreement that underlies this action. VSA has therein asserted claims for breach of contract, tortious interference, negligent misrepresentation, fraud, and unfair trade practices. Varnell, Struck & Associates, inc. SA v. Lowes, supra, at Docket Entry # 2. Honorable Carl Horn, III, United States magistrate Judge, has, however, recommended dismissal with prejudice of VSA's claims for unfair and deceptive trade practices (Counts IV and V), tortious interference with contract (Count VI), negligent misrepresentation (Count VII), and fraud (Count VIII). Id., at Docket Entry #31. Even with such recommended dismissal, core claims sounding in breach of contract remain pending before this

court.

The undersigned analysis begins with Rule 13(a), Federal Rules of Civil Procedure, which provides as follows:

> **Compulsory Counterclaim.**
> (1) In General.
> A pleading must state as a counterclaim any claim that — at the time of its service — the pleader has against an opposing party if the claim:
>> (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and
>> (B) does not require adding another party over whom the court cannot acquire jurisdiction.
> (2) Exceptions.
> The pleader need not state the claim if:
>> (A) when the action was commenced, the claim was the subject of another pending action; or
>> (B) the opposing party sued on its claim by attachment or other process that did not establish personal jurisdiction over the pleader on that claim, and the pleader does not assert any counterclaim under this rule.

Fed.R.Civ.P. 13(a). In conducting such analysis, the Court of Appeals for the Fourth Circuit has provided a four-factor test <u>Sue & Sam Manufacturing Co. v. B-L-S Construction Co.</u>, 538 F.2d 1048, 1051-54 (4th Cir. 1976). <u>Sue & Sam</u> requires consideration of: (1) whether the issues of fact and law raised in the claim and counterclaim are largely the same; (2) whether *res judicata* would bar a subsequent suit on the party's counterclaim; (3) whether substantially the same evidence supports or refutes the claim as well as the counterclaim; and (4) whether there is any logical relationship between the claim and counterclaim. The common thread that must weave its way through all four factors is "evidentiary similarity" between the evidence necessary to prove the claim and evidence necessary to prove the counterclaim. <u>Painter v. Harvey</u>, 863 F.2d 329, 331-32 (4th Cir. 1988).

The undersigned has first considered whether there is an overlap of fact and law. Review and comparison of the Complaints in the respective actions reveals that the VSA Complaint concerns violation of Article Four of the contracts, which is alleged to be a breach of the termination provisions of the contracts. Further, the VSA Complaint also takes aim at the exclusive dealing provision of Section 1.2, with VSA contending that such was an unfair restraint on trade. The Lowe's Complaint concerns alleged violations of VSA's obligation to indemnify Lowe's in Article Seven and to obtain and maintain liability insurance in Article Eight. While the contract is a common thread necessary to proof in both actions, two very distinct and apparently unrelated "wrongs" are at issue here, thus there will be almost no overlap of fact and law other than the contract itself. In its reply, VSA raises an excellent point concerning their post-termination duties if such termination amounted to a breach of the contract. Specifically, VSA argues that "Lowe's breach of contract and course of dealing excuses VSA's performance of the obligations under the agreements." VSA's Reply, Docket Entry 27, at 8. Thus, if the jury in the VSA action finds that Lowe's breached the provisions of Article Four of the contracts when it terminated them in 2005, VSA may well have had no obligations under Articles Seven and Eight in 2006 when it supposedly aligned itself with the Dudash plaintiffs. This would be an affirmative defense, which is clearly recognized at common law in North Carolina:

> The general rule governing bilateral contracts requires that if either party to the contract commits a material breach of the contract, the other party should be excused from the obligation to perform further. 6 Williston, Contracts § 864, at 290 (3d ed. 1962).

<u>Coleman v. Shirlen</u>, 53 N.C.App. 573, 578 (1981). While there is no overlap of material fact other than the existence of the contract itself, the existence of the contractual obligations in 2006 could well be called into question by the alleged breach by Lowe's in 2005.

Second, the undersigned has considered whether *res judicata* would bar the claims in this action if a judgment is reached in VSA's action. The doctrine of *res judicata,* or claim preclusion, holds that once a claim has been litigated and resolved, it may not be reasserted elsewhere. It bars attempts to relitigate or restate claims that have been resolved in another court proceeding. <u>HMK Corp. v. Walsey</u>, 637 F. Supp. 710, 716-18 (E.D. Va. 1986), <u>aff'd</u>, 828 F.2d 1071 (4th Cir. 1987), <u>cert. denied</u>, 484 U.S. 1009 (1988). Under <u>Martin v. American Bancorporation Retirement Plan</u>, 407 F.3d 643, 650 (4th Cir. 2005), *res judicata* applies where there is a final judgment on the merits of the claim in a prior suit, there is an identity of the cause of action in both suits, and there is an identity of the parties. <u>Id.</u> Assuming that the first and third elements of *res judicata* where met in the earlier filed action, an identity of the causes of action in both suits is lacking inasmuch as the first action is, mainly, a breach of contract based on improper termination, while this action is a breach of contract based on lack of indemnification and defense. While an adverse finding in the earlier action may yield an affirmative defense that VSA's performance was excused, *res judicata* is a separate affirmative defense which would not arise from such a conclusion of the earlier filed action.

Third, the undersigned has considered whether substantially the same evidence

supports or refutes the claim as well as the purported counterclaim. Beyond the evidence as to the contract itself, it appears that the evidence relating to the 2005 termination and the 2006 failure to indemnify or defend draws from very distinct and separate acts.

Fourth, the court has considered whether there is any logical relationship between the claim and counterclaim. The parties are the same (for the most part) and the contract is the same. In addition, the viability of the proposed counterclaim is somewhat dependent upon the outcome of the claim. There, the similarities end.

* * *

In sum, the undersigned cannot find that Lowe's claims herein must be brought in the VSA action as *compulsory* counterclaims. Certainly, they could have been asserted as counterclaims, and, as will be discussed *infra,* the undersigned will recommend that these actions be consolidated for further proceedings inasmuch as separate proceedings and trials on these two complaints would be an unconscionable waste of judicial and taxpayer resources. The undersigned will, therefore, recommend that VSA's Motion to Dismiss under Rules 12(b)(6) - - on the basis that such claims are compulsory counterclaims under Rule 13(a) - - respectfully be denied.

**B.     Contract Terms Left Open**

VSA next argues that dismissal of the Complaint is appropriate because certain material contract terms were left open, making the contracts unenforceable as a matter of law. Specifically, VSA contends that because the contracts call for representation by an attorney as to whom the parties would be "mutually agreeable"

in the event of a claim by third-parties, the contract is unenforceable because such was a material term left open and incapable of resolution. Lowe's contends that such term is neither material nor unresolvable because the contracts call for resolution by mediation of any dispute arising under the contracts. In reply, VSA argues that selection of counsel is material to the agreements, and that it has no contractual defense obligation to Lowe's unless the parties agree on the choice of counsel.

Whether the parties could have agreed on counsel in their mutual defense of Lowe's is hypothetical at this point inasmuch as VSA has, according to the Complaint, not honored its duty to defend Lowe's. Thus, whether the parties *could* have mutually agreed on counsel, whether they would have been forced to mediate that issue, or whether one or the other would have sought declaratory relief from this or another court, are all moot questions.

While the undersigned could find no case that specifically dealt with mutual agreement as to counsel as a material term of contract, the undersigned considered Chappell v. Roth, 353 N.C. 690 (2001), cited by VSA in support of its motion. In Chappell, the North Carolina Supreme Court found that

> [i]n the present case the mediated settlement agreement provided that defendants would pay $20,000 to plaintiff in exchange for a voluntary dismissal with prejudice and a "full and complete release, mutually agreeable to both parties." The "mutually agreeable" release was part of the consideration, and hence, material to the settlement agreement. The parties failed to agree as to the terms of the release, and the settlement agreement did not establish a method by which to settle the terms of the release. Thus, no meeting of the minds occurred between the parties as to a material term; and the settlement agreement did not constitute a valid, enforceable contract.

Id., at 693. The lesson to be taken from Chappell is two part: (1) the "mutually

agreeable release" was material to the contract in that it was made in *consideration* for the voluntary dismissal; and (2) the court determined that no meeting of the minds occurred only after the parties failed to agree to the terms of a release *and* the agreement did not provide a mechanism by which to settle the claim.

Reading the entirety of the contracts submitted, it does not appear that reaching an agreement as to counsel was material to or even consideration for the agreement.

> Consideration exists if "the promisee, in return for the promise, ... refrains from doing anything which he has a right to do.""Forbearance or a promise to forbear the exercise of a legal right is a sufficient consideration for a promise made on account of it.... However, forbearance of a right which does not exist, or a promise to refrain from doing that which the promisee cannot legally do, cannot constitute consideration."

Duncan v. Duncan, 147 N.C.App. 152, 155 (2001)(citations omitted). Reading the Complaint in Lowe's favor, there is no doubt that VSA agreed to defend and indemnify Lowe's if it was hailed into court for VSA's act. That promise was clearly a material part of the consideration which VSA gave in return for the business secured from Lowe's. That VSA then agreed to retain counsel who would be mutually agreeable to both VSA and Lowe's is neither material nor consideration inasmuch as VSA was not giving up at that point a legal right which it still possessed. Put another way, it would appear that the forbearance of VSA was in agreeing to indemnify and defend Lowe's - - the identity of counsel, and the tools and expenses he or she might employ in their work, is merely a detail. For there to be mutuality of promises, each promise must impose a legal liability upon the promisor so as to give rise to a cause of action for at least nominal damages upon its breach. Kirby v.

Stokes County Bd. of Educ., 230 N.C. 619 (1949). In this case, the agreement to indemnify and defend is such a promise the breach of which could lead to damages; the agreement to agree on counsel to effectuate such promise, while possibly leading to declaratory relief in the event the parties could not agree, would not support even an award of nominal damages.

Turning back to Chappell, which is VSA's most persuasive case, it does not appear that the agreement to agree on counsel at issue here comes close to running afoul of Chappell inasmuch as (1) the "mutually agreeable" selection of counsel was not material to the contract in that it was not made in *consideration* for the business the contract provided VSA; (2) it cannot be found that "no meeting of the minds" occurred inasmuch as the parties herein never even attempted to agree on counsel; (3) the agreement here provides for a mechanism by which to settle any dispute as counsel, mediation, which was also not used; and (4) it was the agreement to defend and indemnify which was material in that it amounted to at least partial consideration for the business promised by Lowe's. Another way to look at whether agreement as to counsel is material consideration is whether the contract could be read without the supposedly offending provision. In this case, agreement as to counsel is not necessary to enforcement of the agreement to defend and indemnify. Indeed, if this court were to adopt VSA's reasoning, insurance and other contracts would that routinely provide for indemnification and defense would be unenforceable simply because the parties may not agree on counsel.

The undersigned must, therefore, respectfully recommend that VSA's Motion

to Dismiss the Complaint based on unenforceability of the contracts due to open terms be denied.

## C. Unenforceability under the FLSA

Finally, VSA argues that the contracted for duties to defend and indemnify are unenforceable under the FLSA as running contrary to public policy. While VSA's argument in reply pointing out the numerous times the Dudash plaintiffs have mention Lowe's in the Amended Complaint and that it is contended that Lowe's was their co-employer, it is clear reading the allegations of the Amended Complaint that it is the employment acts and practice of VSA of which they complain, in which Lowe's is alleged to have been complicit. VSA argues, in part, that

> The FLSA does not provide a right of indemnity to any employer for its violations of the FLSA. "There is no right of contribution or indemnification for employers found liable under the FLSA." *Herman v. RSR Security Svcs., Ltd., et al.*, 172 F. 3d 132 (2d Cir. 1999). "[T]o engraft an indemnity action upon this otherwise comprehensive federal statute would run afoul of the Supremacy Clause of the Constitution and would undermine employers' incentives to abide by the Act." *Lyle v. Food Lion, Inc.*, 954 F. 2d 984 (4th Cir. 1992)—citing *LeCompte Credit Corp.*, 780 F. 2d 1260 (5th Cir. 1986) and affirming dismissal of employer's third party complaint for breach of fiduciary duty, breach of contract and indemnity for FLSA exposure. This prohibition applies to contractual indemnity as well. *Gustafson v. Bell Atlantic Corp.*, et al.. 171 F. Supp 2d 311 (S.D. N.Y. 2001). In Gustafson, the defendants/third party plaintiffs sought indemnity from the FLSA plaintiff's employer "JAG" for FLSA and state employment law claims, as Lowe's does here. In response to a motion for summary judgment on the indemnity claims, the Gustafson defendants claimed that their indemnity claim was a claim for damages for breach of contract by a third party (as Lowe's pleads here) rather than a claim under the FLSA. *Id.*, 327, 328. The defendants also claimed, as Lowe's does here, that if they were liable under the FLSA to pay overtime wages, it was as a result of the plaintiff's employer's breach of its contractual obligation to comply with applicable state and federal laws. *Id.*

VSA's Memorandum in Support, at 11-12 (footnote omitted). While this argument is very appealing, it appears to miss the mark of the public policy concern at issue: enforcement of agreements by the *employee* to either defend or indemnify the employer for labor violations committed against the employee. The undersigned whole heartedly agrees with the decision of the appellate court in <u>Lyle v. Food Lion, Inc.</u>, 954 F. 2d 984 (4th Cir. 1992), inasmuch as to hold otherwise would be to gut the remedial nature of the FLSA. It would indeed be unconscionable for an employer to escape liability for unlawful labor practices by having the employee agree to indemnify the employer for FLSA violations. Indeed, in the cases this court has found on indemnification and the FLSA,[2] courts have consistently held that indemnification violates public policy where the employee or employee funds are the sources of indemnification. No reported case the undersigned can find would prohibit contractual third-party indemnification of FLSA claims.

That is, however, not the case the court faces here. Reading the allegations in the Dudash Amended Complaint in the manner in which VSA contends they should be read, it is alleged that Lowe's was complicit of the VSA's violations of the FLSA and that Lowe's was a co-employer. To enter into an agreement to have VSA defend

---

[2] *Pittsburgh Mack Sales & Service, Inc. v. International Union of Operating Engineers,* 2007 WL 2907950 (W.D.Pa.2007); *Chao v. AKI Industries, Inc.,* 2007 WL 1839652 (D.Utah 2007); *Local 1035, International Broth. of Teamsters v. Pepsi Allied Bottlers, Inc.,* 99 F.Supp.2d 219 (D.Conn. 2000); and *Daniels v. Board of Trustees of Herington Mun. Hosp.* 841 F.Supp. 363 (D.Kan. 1993).

and indemnify Lowe's is no more offensive to public policy than to allow Lowe's to obtain insurance coverage for such risk. Further, an agreement to defend and indemnify is not an avoidance of liability for Lowe's inasmuch as it would remain obligated to the employees on any judgment they may obtain. It would be up to Lowe's to secure from VSA reimbursement. Thus, if VSA were insolvent, the employees would lose nothing.

The undersigned will, therefore, respectfully recommend that VSA's Motion to Dismiss based on FLSA public policy be denied.

## V.     The Individual Defendants' Motion to Dismiss

The individual defendants contend that this court lacks personal jurisdiction over them, that venue is improperly laid in this court, and that the Complaint fails to state a claim upon which relief can be granted against them in their individual capacities. The undersigned will consider each argument *seriatim*.

### A.     Personal Jurisdiction

The individual defendants contend that the action should be dismissed as to them because they do not have the requisite minimum contacts with the State of North Carolina that would justify the exercise of personal jurisdiction over them.

At the constitutional level, whether to exercise jurisdiction over a defendant is a question of fairness. International Shoe Co. v. Washington, 326 U.S. 310, 317-20 (1945). However, determining what is fair requires review of the quantity and quality of a defendant's contacts with the forum state. Perkins v. Benquet Mining Co., 342 U.S. 4376 (1952). Constitutional concerns only arise where jurisdiction is allowed

pursuant to a state's long-arm statute. As the Court of Appeals for the Fourth Circuit has stated:

> [W]hen evaluating the propriety of jurisdiction obtained pursuant to a long-arm statute, a two-step analysis is normally required. First, we must determine whether the statutory language applies to the defendant; second, if the statutory language applies, we must determine whether the statutory assertion of jurisdiction is consistent with the due process clause of the Constitution.

English & Smith v. Metzger, 901 F.2d 36, 38 (4th Cir. 1990) (citation omitted).

In considering defendants' Motion to Dismiss, analysis begins with the two-step approach furnished by the appellate court. The North Carolina Supreme Court has held that the state's jurisdictional statute applies to a defendant who meet the minimal contacts requirement of International Shoe Co. v. Washington, supra. See Dillon v. Numismatic Funding Corp., 291 N.C. 674 (1977); see also Western Steer-Mom & Pops v. FMT Invs., Inc., 578 F. Supp. 260, 264 (W.D.N.C. 1984). The two-pronged approach approved by the circuit in English & Smith "collapses into the question of whether (the Defendants have) the minimum contacts with North Carolina." Fieldcrest Mills, Inc. v. Mohasco Corp., 442 F. Supp. 424, 426 (M.D.N.C. 1977).

There are five factors used in determining whether the long-arm statute and minimum contacts have been satisfied:

(1) quantity of the contacts;
(2) nature and quality of the contacts;
(3) source and connection of the cause of action to the contacts;
(4) interest of the forum state; and
(5) convenience.

Western Steer-Mom & Pops v. FMT Invs., Inc., supra, at 264; see Fieldcrest Mills, Inc. v. Mohasco Corp., supra, at 427; see also N.C. Gen. Stat. § 1-75.4(5) (North Carolina long-arm statute). The burden is on plaintiff to establish that the long-arm statute provides for jurisdiction over these defendants. Marion v. Long, 72 N.C. App. 585, cert. denied, 313 N.C. 604 (1985). Therefore, the materials and arguments submitted by plaintiff and defendants will be reviewed in light of the five considerations found in Western Steer-Mom & Pops v. FMT Invs., Inc., supra, seriatim. All of the individual defendants' contacts with North Carolina, regardless of purpose, may be considered in determining whether personal jurisdiction exists, and as this court has earlier found, a defendant cannot discount contacts it made with the forum state on behalf of a corporation. Dove Air, Inc. v. Bennett, 226 F.Supp.2d 771, 780 (W.D.N.C. 2002). The court has allowed discovery on the individual defendants' contacts with the forum state.

The individual defendants' argument that the Complaint fails to allege sufficient jurisdictional facts, or that the court's review is limited to facts asserted in the Complaint, is unavailing. As discussed supra, he court may consider "the motion papers, supporting legal memoranda, affidavits, other documents, and the relevant allegations of the complaint," and the burden is plaintiff's "to make a mere *prima facie* showing of jurisdiction to survive the jurisdictional challenge." Clark v. Milam, 830 F.Supp. 316, 319 (S.D.W.Va.1993) (citations omitted).[3]

---

[3]     The undersigned has also considered the individual defendants argument that Lowe's has insufficiently pleaded facts in support of its claim that the VSA corporate veil should be pierced. Reading the allegations of the

## 1.  Quantity of Contacts

Plaintiff has submitted its responsive brief with attached exhibits, which tend to show that defendants had substantial contacts with the forum state. The North Carolina long-arm statute specifically requires "substantial activity" within the state. N.C. Gen. Stat. Section 1-75.4(d) (1989). Plaintiff's exhibits contain deposition transcript excerpts of both of the individual defendants, their responses to interrogatories, their North Carolina tax returns, their NC K-1s, lease agreements, mortgage agreements, cell phone bills, the Complaint in VSA v. Lowes, a loan guaranty, a loan agreement, another guarantee, a final agreement with Bank of America, and the corporate records of VSA. Review of those records reveals that each of these individual defendants have had numerous contacts with the North Carolina, much of which appears to touch upon the business concerns underlying this action. Thus, these defendants have had substantial contacts with the forum state.

## 2.  Nature and Quality of the Contacts

Contacts with a state should be viewed together, not in isolation. Hirschkop & Grad, P.C. v. Robinson, 757 F.2d 1499, 1503 (4th Cir. 1985). Viewed together,

---

Complaint in a light most favorable to Lowe's, a sufficient basis for piercing the corporate veil has been alleged in that Lowe's has alleged facts that, if later proved, would show that these individual defendants disregarded the corporate entity, made it a mere instrumentality for their own affairs, that there was a unity of interest such that the separate identities of the corporation and individuals no longer exists, and that to recognize the corporation would promote injustice. The undersigned stresses, however, that this is, as it must be, based on a favorable reading of the Complaint and does not bind the court in further proceedings, such as summary judgment. Personal jurisdiction would, therefore, be appropriate based on the individual defendants being the alter egos of VSA.

the nature of these contacts involve such defendants visiting and otherwise making contacts within the forum to further the business enterprise; the quality of these contacts appears to be high in that the contacts were purely in furtherance of the business concern which is at the core of this dispute.

### 3. Source and Connection of the Action to the Contacts

The nexus between the contacts and the source of action is direct and unbroken.

### 4. Interest of the Forum State

The intent of the North Carolina long-arm statute is to assert *in personam* jurisdiction to the full extent permitted by the Due Process Clause of the United States Constitution. Kaplan School Supply Corp. v. Henry Wurst, Inc., 56 N.C. App. 567, cert. denied, 306 N.C. 385 (1982). There is a mandate that the North Carolina long-arm statute be given liberal construction, thereby favoring the finding of personal jurisdiction. F.D.I.C. v. Kerr, 637 F. Supp. 828 (W.D.N.C. 1986). As exhibited in the long-arm statute, North Carolina has a substantial interest in the execution of contracts within this state, promises of services to be rendered in this state, solicitation of business within the state, and goods or intellectual property being licensed or sold to corporate residents of the state. See N.C. Gen. Stat. §§ 1-75.4(5)(a), et seq. Here, defendants were the sole shareholders and controlling officers of VSA and agreed in such capacity to the contracts that form the basis of this suit. Further, it appears that such contracts fully anticipated litigation of any disputes that may arise in North Carolina. This court finds North Carolina to have a keen

interest in this litigation.

**(5)   Convenience**

Whether the travel required in this case will be by or on behalf of the individual defendants to North Carolina, or on behalf of plaintiff to another forum, such as Georgia where the individual defendants reside, the convenience of this forum is not a significant factor.

\* \* \*

Plaintiff having satisfied the requirements of North Carolina's long-arm statute, the court's focus shifts to whether exercise of such jurisdiction would "offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). The question is not whether the contacts predominate, but whether "enough minimum contacts exist that the district court's assumption of specific jurisdiction satisfied due process." English & Smith v. Metzger, supra. The "fair warning" requirement is satisfied if the defendants have "purposefully directed" their activities at residents of the forum, and the litigation results from the alleged injuries that "arise out of or relate to" those activities. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985).

As discussed supra, the alleged injuries complained of by plaintiff directly arose from the activities of defendants in this state, as well as other places. Plaintiff has presented evidence that defendants routinely traveled and did business in this state. When considered alongside other materials presented, the conclusion that

North Carolina's long-arm statute reaches the individual defendants and that traditional notions of fair play are not offended is unavoidable. Defendants appear to have purposely directed activities toward a residents of the State of North Carolina. The contacts were sufficient to have led defendants to "reasonably anticipate being haled into court" in North Carolina. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). Therefore, the undersigned determines that this court has jurisdiction over the defendants and that the exercise of such jurisdiction would not offend traditional notions of fair play or substantial justice. The undersigned will recommend that this aspect of the individual defendants' Motion to Dismiss be, respectfully, denied.

**B.    Motion to Dismiss for Improper Venue**

The individual defendants next contend that venue is improperly laid in this court. The undersigned flatly disagrees.

Defendants base their motion on a theory that Lowe's has failed to allege that any of their alleged wrongful conduct occurred in North Carolina. Lowe's has, however, alleged: (1) the existence of specific venue selection clauses in each of the five contracts at issue in this case, Compl., at ¶ 6; (2) that each of the contracts was made in North Carolina; and (3) that Lowe's is a corporate resident of the States of North Carolina, with its headquarters in the Western District of North Carolina. Id., ¶ 1.When considering a motion to dismiss for improper venue, a court must accept the facts alleged in the complaint as true and must draw all reasonable inferences in the plaintiff's favor. Micromuse, Inc. v. Aprisma Management Technologies, Inc.,

supra.

Where, as here, no evidentiary hearing is held, the plaintiff need only make a *prima facie* showing of venue, <u>Delong Equip. Co. v. Washington Mills Abrasive Co.</u>, 840 F.2d 843, 845 (11th Cir. 1988), and plaintiff has satisfied its burden. Venue is governed by 28, United States Code, Section 1391(a), which provides, in relevant part, as follows:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides . . . (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction . . . if there is no district in which the action may otherwise be brought.

In <u>Mitrano v. Hawes</u>, 377 F.3d 402 (4th Cir. 2004), the Court of Appeals for the Fourth Circuit specifically addressed and discussed the current analysis applicable to venue:

> In 1990, § 1391 was amended to make venue proper in any "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." [FN2] Congress amended the statute because the prior language "led to wasteful litigation whenever several different forums were involved in the transactions leading up to the dispute." Under the amended statute, it is possible for venue to be proper in more than one judicial district. We therefore no longer apply the "weight of the contacts" test. Additionally, in determining whether events or omissions are sufficiently substantial to support venue under the amended statute, a court should not focus only on those matters that are in dispute or that directly led to the filing of the action. Rather, it should review "the entire sequence of events underlying the claim."
>
> > FN2. An action may also be brought in a judicial district where a defendant resides, if all defendants reside in the same state, or where any defendant is subject to personal jurisdiction, if there is no other district in which the action

-26-

> may be brought. See 28 U.S.C.A. § 1391(a). Because
> Hawes resided in Massachusetts and venue would be
> proper in Massachusetts, neither provision would provide
> a basis for venue in Virginia.

Id., at 405(citations omitted). Jurisdiction in this action is founded solely on diversity, making Section 1391(a) applicable.

Reviewing the entirety of the sequence of events as alleged in the Complaint and set forth above, venue is appropriate in this district under the first part of Section 1391(a)(2) because a substantial part of the events giving rise to this action occurred in this district. Venue is also appropriate under the second part of Section 1391(a)(2), which allows for venue where a substantial part of the property that is the subject of the action is "situated." The Court of Appeals for the Fourth Circuit found venue was appropriate under the first part of Section 1391(a)(2) where

> the events and facts central to this case concerned [defendant] Jarrard's
> training, her access to and knowledge of trade secrets, and her job
> responsibilities, all of which are anchored in Maryland. Moreover, the
> alleged injuries that Jarrard has caused or threatens to cause were or will
> be sustained in Maryland.

Ciena Corp. v. Jarrard, 203 F.3d 312, 318 (4th Cir. 2000). While it was anticipated by the contract that defendants would perform duties in many places, each contract clearly provided that any action would be litigated in North Carolina, firmly "anchoring" the contracts in this forum. Further, the harm alleged to have been caused by these defendants will be sustained in North Carolina inasmuch as Lowe's is a North Carolina corporation headquartered in North Carolina. Finally, the individual defendants have shown absolutely no basis for their alternative motion to transfer this matter to the Northern District of Georgia, inasmuch as such a transfer

would only shift the slight inconvenience to plaintiff and would, in any event, be a result antithetical to the terms of the contracts.

Inasmuch as this district would be an appropriate venue under Section 1391(a)(2), the undersigned will respectfully recommend that then individual defendants' Motion to Dismiss based on Rule 12(b)(3) be denied.

### C.   Failure to State a claim Against Defendants in Their Individual Capacities

Finally, the individual defendants contend that the Complaint fails to state a claim upon which relief can be granted against them in their individual capacities. See Docket Entry #14, at 1. While such assertion is made on the face of the motion, it is no where mentioned in their supporting brief and Lowe's does not address such motion in its response. The undersigned will, respectfully, recommend that such motion be denied as it has not been supported.

## VI.   Consolidation of Cases

Even though the undersigned cannot recommend that this action be dismissed under Rule 13(a), Federal Rules of Civil Procedure, inasmuch as the claims asserted herein are not *compulsory* counterclaims, the undersigned is compelled to recommend that this case be consolidated with the earlier filed action. As defendants point out, if it is determined in the earlier action that Lowe's breached these contracts when it terminated them in 2005, then defendants' duty to perform after such breach would be excused as a matter of North Carolina law. While it may be argued that combining the supposedly unrelated breaches in one trial may be confusing to a jury, the undersigned firmly believes that such task is well within the ability of a properly

instructed jury. Indeed, the juries of this district are routinely called on to resolve criminal cases involving multiple defendants in complex conspiracies, difficult issues involving operation of businesses, and complex tort actions involving various alleged causes. To hold two trials would only be to invite inconsistent verdicts and duplication of costs. Rule 42(a), Federal Rules of Civil Procedure, provides as follows:

> **Consolidation; Separate Trials**
> (a) Consolidation.
> If actions before the court involve a common question of law or fact, the court may:
> > (1)   join for hearing or trial any or all matters at issue in the actions;
> > (2)   consolidate the actions; or
> >
> > (3)   issue any other orders to avoid unnecessary cost or delay.

Fed.R.Civ.P. 42(a). Thus, the undersigned will recommend that this action be consolidated with <u>Varnell, Struck & Associates, Inc. v. Lowe's Companies, Inc.</u>, 5:06cv68 (W.D.N.C. 2006).

## RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that

(1)   Varnell, Struck and Associates, Inc.'s Motion to Dismiss (#11)  be **DENIED**;

(2)   David Struck's and John Varnell's Motion to Dismiss (#14)  be **DENIED**; and

(3)   that this action be consolidated with <u>Varnell, Struck & Associates, Inc.</u>

v. Lowe's Companies, Inc., 5:06cv68 (W.D.N.C. 2006) in accordance with Rule 42(a), Federal Rules of Civil Procedure.

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **ten (10)** days of service of same. Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).

Signed: March 27, 2008

Signature of Dennis L. Howell

Title of Signing Officer
United States District Court